**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE HON. RICHARD K. EATON, SENIOR JUDGE**

| | |
|---|---|
| LUTRON ELECTRONICS CO., INC.,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)  Court No.  22-00264<br>UNITED STATES,  )<br>)<br>Defendant.  )<br>) | |

## MOTION TO COMPEL

Pursuant to Rules 7, 26 and 37 of the Rules of the United States Court of International Trade, plaintiff, Lutron Electronics Co., Inc., (Lutron) moves to compel the last known addresses of all former U.S. Customs and Border Protection (CBP) personnel identified in the government's responses to Lutron's First Request for Interrogatories and the production of unredacted copies of all documents the government previously produced in response to Lutron's First Requests for Production of Documents and Things Directed at Defendant redacted pursuant to the deliberative process privilege.  Alternatively, with respect to the documents redacted pursuant to the deliberative process privilege, Lutron moves to compel the government to produce unredacted documents to this Honorable Court for an *in-camera* inspection.  As discussed below, Lutron fulfilled its obligation to try to resolve the dispute in good faith before turning to this Court for relief.

### I.  Background

This matter concerns the proper classification of Lutron's intelligent window shade machines ("shade machines" or "machines"), which, until recently, was a settled issue.  Shade

1

machines are unitary, complex electromechanical machines comprised of a multitude of electro-mechanical parts (i.e., motors, gears, brakes, etc.) each working together to control various aspects of an interior space including visible light, ultraviolet rays, electricity consumption, heat gain/loss, mood, privacy, security, etc.  Lutron's shade machines also include sophisticated electronics enabling the machines to be controlled remotely, function intelligently and autonomously, and/or be integrated into complete home automation systems which can include sensors, thermostats, dimmers, and security systems.

    **i.**    **CBP's Previous Classification of Lutron's Shade Machines**

In or around April of 2007, Lutron, through counsel, filed an Administrative Ruling Request with CBP seeking a tariff classification ruling on two Lutron shade machines including machines substantially identical to those at issue.  In its request Lutron fully described the shade machines, their constituent parts, and their functionality.  On May 3, 2007, CBP issued NY N010048 (attached as exhibit A) which stated, in relevant part:

> The controllable shading and drapery track systems are used for commercial and residential applications. The systems aid in reducing glare, protecting furnishings from U/V damage, and maximizing HVAC efficiency.  The settings of both systems are electronically programmable so that window treatments can be programmed to stop at preset positions. The systems can also be equipped to receive infrared control signals and may be controlled by hand-held remotes in addition to the keypad controls. As you indicate in your letter, the track systems will be complete at time of importation from Mexico. The complete controllable shading systems consist of fabric shades, hembars, one (or more) quiet electronic drive units ("QEDs"), roller tubes, roller bulk idlers, brackets, and associated hardware. The complete drapery track systems consist of one or more QEDs, drapery tracks, brackets, and associated hardware. Drapes are not included at time of importation.
>
> **The applicable subheading for the complete controllable shading and drapery track systems will be 8479.89.9897, Harmonized Tariff Schedule of the United States (HTSUS), which provides for machines and mechanical appliances having individual functions,**

2

>**not specified or included elsewhere in chapter 84: other machines and mechanical appliances: other: other: other: other.** The rate of duty will be 2.5 percent ad valorem.

NY N010048 (emphasis added).  Lutron thereafter began entering its shade machines under subheading 8479.89.98, HTSUS, in accordance with NY N010048.

### ii. CBP's Change in the Classification of Lutron's Shade Machines

NY N010048 remained in effect for more than a decade.  Then, on January 26, 2022, CBP published Customs Ruling HQ H312768 (ruling attached as Exhibit B), modifying NY N010048.  HQ H312768 is hereinafter referred to as the "modification ruling."  In the modification ruling, CBP explained that Lutron's shade machines were composite goods within the meaning of the General Rule of Interpretation 3(b) and thus were classifiable in accordance with the component providing their essential character.  CBP asserted in the Modification Ruling that in "NY N010048, CBP determined that the essential character of the controllable shading system was imparted by the QED" but now determined that the shade fabric component constituted the essential character of the machines.  Exhibit B at 4.  As such, CBP determined that the shade machines were not classifiable under Heading 8479, HTSUS, as machines or other mechanical appliances as previously determined, but under 6303, HTSUS, which provides for 'curtains (including drapes) and interior blinds; curtain or bed valances."  *Id.*  Interestingly, as a result of the change in classification, the shade machines were not only subject to an increase in general duties but also became subject to the relatively newly instituted Section 301 duties.  After the Modification Ruling became effective Lutron began to enter its machines accordingly.  Thereafter, Lutron protested CBP's new classification position and filed the instant action pursuant to this Court's 28 U.S.C. 1581(a) jurisdiction to challenge CBP's classification.

3

### iii.     Discovery

Section 1581(a) matters are decided *de novo* based upon a record created through discovery. Pursuant to USCIT Rule 26(b)(1), the scope of permissible discovery is broad:

> [u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding **any nonprivileged matter that is relevant to any party's claim or defense** and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

USCIT Rule 26 (Emphasis added).

Here CBP issued two rulings on the merchandise at issue. In the first ruling CBP determined that Lutron's shade machines were classified under Heading 8479, HTSUS, which covers machines and other mechanical appliances, the same classification that Lutron advances in this action. Then, more than a decade later, CBP issued the Modification Ruling determining that the shade machines are classifiable under Heading 6303, HTSUS, which covers curtains and interior blinds. Of further note, in the Modification Ruling, CBP claimed that both rulings were based upon a GRI 3(b) essential character analysis. It should be beyond any reasonable dispute that the analyses underlying both decisions, along with any associated documents, are highly relevant in this action and, absent a valid and enforceable privilege, discoverable.

On February 3, 2023, Lutron served interrogatories and document requests upon the government. Through its requests Lutron sought, among other things, a detailed explanation of the complete factual and legal basis underlying both rulings, the identity and last known addresses of pertinent CBP personnel including those responsible for the two rulings, and the complete ruling

4

files pertaining to the two rulings. On May 12, 2023, the government responded with written interrogatory answers and produced hundreds of pages of documentary discovery including the ruling files for NY N010048 and the Modification ruling. As will be discussed in more detail below, a review of the government's discovery responses raised several serious concerns.

First, the government failed to fully explain the rationale behind both rulings in its interrogatory responses. Second, CBP identified pertinent individuals including National Import Specialist Patricia O'Donell who reportedly authored NY N010048, NIS John Hanson with whom she reportedly consulted, and several other retired/former CBP personnel who were consulted with respect to the modification ruling. The government, however, objected and declined to provide the last known addresses for any of these former/retired CBP personnel asserting that the information was "protected by privacy laws."

Third, although the government disclosed dozens of relevant emails contained in the ruling files for the two rulings issued to Lutron, the government, asserting the deliberative process privilege, heavily redacted the majority of these emails. Attached as Exhibit C is the government's privilege log outlining the documents it redacted.[1] In fact, the government went so far as to redact the subject lines of many emails. See e.g., Exhibit D. However, even a cursory review of the redactions led Lutron to believe the redactions were overbroad. Indeed. the government redacted statements made years before CBP had even decided that NY N010048 was incorrect (See e.g., Exhibit E); statements made after the Modification Ruling had been fully drafted (See e.g. Exhibit F); every single factual statement concerning the shade machines including their parts and functions; and did not reveal a single statement that could be found in either ruling. The

---

[1] We note that the government also redacted BPI of third parties not a party to the instant litigation. We do not seek the production of any such BPI.

government's redactions were all the more problematic in light of their failure to fully explain the legal and factual basis behind CBP's rulings other than to assert that the legal and factual bases could be discerned from the rulings themselves.

    **iv.    Lutron Has Attempted Multiple Times to Resolve the Instant Dispute in Good Faith to No Avail**

As a result of the issues surrounding the government's responses, and in accordance with USICT rule 37, Lutron attempted on several occasions to resolve the various issues. For example, on May 15, 2023, undersigned counsel contacted government counsel to query whether the government would agree to accept service on behalf of retired witnesses in lieu of providing last known addresses.  The government indicated that it did not represent former government employees but was open to discussing accepting service but wanted the identity of the specific witnesses plaintiff wished to depose.  The government did not make any firm commitment, however.  Thereafter, on June 6, 2023, Lutron sent the government a letter (June Letter) setting forth the identity of several of the former personnel it wished to depose and highlighting many of the obvious problems with the Government's redactions. The letter requested the government either provide last known addresses for former witnesses or agree to accept deposition subpoenas on their behalf and reconsider its redactions.

On July 18, 2023, the government responded via letter (July Letter), and the parties were able to resolve certain issues.  However, the government again refused to provide the last know addresses of its former employees, failed to commit to accepting deposition subpoenas on their behalf, and even suggested that Lutron need not depose the retired witnesses because the "plaintiff should be able to obtain facts relating to the Government's defense in this action through a deposition of CBP pursuant to USCIT Rule 30(b)(6)."  The government also defended its redactions.  (June and July Letters Collectively attached as Exhibit G).

6

For example, with respect to the redaction of statements made years prior to the Modification ruling, the government argued that

> [t]he redacted portions of the emails contain pre-decisional thoughts, advice, and opinions on the classification of that merchandise and the effect of NY N010048. Thus, the decision contemplated in the emails was not CBP's revocation of NY N010048 in HQ H312768, but rather it was a separate decision on the classification of the merchandise that occurred when NY N010048 was still in effect.

*Id*. Under this argument, literally any communication concerning the classification of merchandise in an entry would be privileged.

Next, the government defended redactions made after the Modification ruling had been drafted arguing that the privilege can "protect post-decisional documents" if they would reveal pre-decisional deliberation or were prepared post decision to confirm the decision." *Id.* Finally, the government asserted that "CBP did not redact factual information unless it was intertwined with deliberative materials such that it could not be disclosed without revealing the agency's deliberations" and that not a single redacted statement had been adopted into the Modification ruling. *Id.*

Then, and without actually admitting a single improper redaction, the Government withdrew its claim of privilege with respect to several statements contained in two emails. A review of the statements confirmed Lutron's suspicions that the Government's redactions were not entirely appropriate. Specifically, GOV0000339-GOV0000340 and GOV0000341-GOV0000342 were originally redacted as follows:

**GHAZI, PARISA**

| | |
|---|---|
| From: | GULIS, YULIYA A |
| Sent: | Tuesday, January 11, 2022 10:59 AM |
| To: | GHAZI, PARISA |
| Subject: | FW: Final 1625 package; H312768 (tariff classification of controllable shading system) |
| Attachments: | H312768 - 1625 FINAL notice.docx; H312768 - 1625 FINAL notice.pdf; H312768 PJG 1-11-2022.docx; H312768 PJG 1-11-2022.pdf; Memo Controllable Shading System Final.docx; Closed File checklist updated 10-30-2020.docx |

Hi Parisa,

Please see attached for your records (and for eventual publication in CROSS). I already saved the documents in RRTS and closed the case. Please process this case in accordance with the attached closed file checklist. As you can see from the below message, I've asked Erin to update us on the final publication date. Normally, she sends out 1625 packages for publication on Wednesdays and these packages are published in 2 weeks, but we will see how it goes here. I am also attaching to this email a memo that you did [Redacted - DPP]. I emailed this memo to Alice Kipel, [Redacted - DPP] Thank you so much.

Best regards,
Yuliya



**Yuliya A. Gulis**
Chief (Supervisory Attorney-Advisor), Food, Textiles and Marking Branch
Regulations and Rulings | OT | CBP
90 K Street NE, 10th Floor, MS/1177, Washington, D.C. 20229
Desk: 202.325.0042 | Mobile: 202.744.3442 | Email: yuliya.a.gulis@cbp.dhs.gov

**From:** GULIS, YULIYA A
**Sent:** Tuesday, January 11, 2022 10:47 AM
**To:** FREY, ERIN M <ERIN.M.FREY@cbp.dhs.gov>
**Cc:** CLARK, CRAIG T <craig.t.clark@cbp.dhs.gov>; GHAZI, PARISA <parisa.ghazi@cbp.dhs.gov>; MCKINNEY, NATALIE S <natalie.s.mckinney@cbp.dhs.gov>
**Subject:** Final 1625 package; H312768 (tariff classification of controllable shading system)

Hi Erin,

Attached please find the final 1625 package with respect to modification of one ruling letter regarding the tariff classification of controllable shading system for publication in the Customs Bulletin (HQ case number is H312768). I am attaching the Word version for publication, and the PDF version to indicate that I have signed on behalf of Craig. As with the previous 1625 package I sent earlier this morning, please [Redacted - DPP] [Redacted - DPP] [Redacted - DPP] Thank you so much.

Best regards,
Yuliya

1

8

GOV0000339

**GHAZI, PARISA**

| | |
|---|---|
| From: | WACHTEL, KIMBERLY A |
| Sent: | Tuesday, January 11, 2022 4:38 PM |
| To: | GULIS, YULIYA A |
| Cc: | GHAZI, PARISA |
| Subject: | RE: Final 1625 package; H312768 (tariff classification of controllable shading system) |

Acknowledged.

Thank you,



Kim Wachtel
National Import Specialist, Textile Branch, NIS 349
National Commodity Specialist Division |
Regulations and Rulings | Office of Trade
U.S. Customs and Border Protection

150 Westpark Way, Suite 200 | Euless, TX  76040
Cell:  972-269-3558
Email: kimberly.a.wachtel@cbp.dhs.gov

This document and any attachment(s) may contain restricted, sensitive, and/or law enforcement-sensitive information belonging to the U.S. Government.  It is not for release, review, retransmission, dissemination, or use by anyone other than the intended recipient.

From: GULIS, YULIYA A <YULIYA.A.GULIS@CBP.DHS.GOV>
Sent: Tuesday, January 11, 2022 11:38 AM
To: WACHTEL, KIMBERLY A <KIMBERLY.A.WACHTEL@CBP.DHS.GOV>
Cc: GHAZI, PARISA <parisa.ghazi@cbp.dhs.gov>
Subject: Re: Final 1625 package; H312768 (tariff classification of controllable shading system)

Hi Kim - [Redacted - DPP] We just sent it out for publication and [Redacted - DPP] [Redacted - DPP] Thank you so much.

Yuliya

> On Jan 11, 2022, at 12:33 PM, GHAZI, PARISA <parisa.ghazi@cbp.dhs.gov> wrote:
>
> Good afternoon Kim,
>
> Attached, please find our decision in the above-captioned case.

1

GOV0000341

The government claimed that these redactions were necessary to protect "opinions, recommendations, thoughts, advice and pre-decisional analysis regarding agency decisions relating to the modification of NY N010048 and the classification of the subject merchandise." Exhibit C. After withdrawing the claim of privilege, the government produced unredacted copies:

9

GHAZI, PARISA

| | |
|---|---|
| From: | GULIS, YULIYA A |
| Sent: | Tuesday, January 11, 2022 10:59 AM |
| To: | GHAZI, PARISA |
| Subject: | FW: Final 1625 package; H312768 (tariff classification of controllable shading system) |
| Attachments: | H312768 - 1625 FINAL notice.docx; H312768 - 1625 FINAL notice.pdf; H312768 PJG 1-11-2022.docx; H312768 PJG 1-11-2022.pdf; Memo Controllable Shading System Final.docx; Closed File checklist updated 10-30-2020.docx |

Hi Parisa,

Please see attached for your records (and for eventual publication in CROSS). I already saved the documents in RRTS and closed the case. Please process this case in accordance with the attached closed file checklist. As you can see from the below message, I've asked Erin to update us on the final publication date. Normally, she sends out 1625 packages for publication on Wednesdays and these packages are published in 2 weeks, but we will see how it goes here. I am also attaching to this email a memo that you did (and I actually revised it). I emailed this memo to Alice Kipel, it worked for her, but she did not forward this memo to the leadership. Thank you so much.

Best regards,
Yuliya



**Yuliya A. Gulis**
Chief (Supervisory Attorney-Advisor), Food, Textiles and Marking Branch
Regulations and Rulings | OT | CBP
90 K Street NE, 10th Floor, MS/1177, Washington, D.C. 20229
Desk: 202.325.0042 | Mobile: 202.744.3442 | Email: yuliya.a.gulis@cbp.dhs.gov

**From:** GULIS, YULIYA A
**Sent:** Tuesday, January 11, 2022 10:47 AM
**To:** FREY, ERIN M <ERIN.M.FREY@cbp.dhs.gov>
**Cc:** CLARK, CRAIG T <craig.t.clark@cbp.dhs.gov>; GHAZI, PARISA <parisa.ghazi@cbp.dhs.gov>; MCKINNEY, NATALIE S <natalie.s.mckinney@cbp.dhs.gov>
**Subject:** Final 1625 package; H312768 (tariff classification of controllable shading system)

Hi Erin,

Attached please find the final 1625 package with respect to modification of one ruling letter regarding the tariff classification of controllable shading system for publication in the Customs Bulletin (HQ case number is H312768). I am attaching the Word version for publication, and the PDF version to indicate that I have signed on behalf of Craig. As with the previous 1625 package I sent earlier this morning, please note that this is a sensitive case so we need to be updated on the timing of final publication (since I will have to give notice to the parties at interest a day or two before publication). Thank you so much.

Best regards,
Yuliya

1

GOV0000339_overlay

GHAZI, PARISA

| | |
|---|---|
| From: | WACHTEL, KIMBERLY A |
| Sent: | Tuesday, January 11, 2022 4:38 PM |
| To: | GULIS, YULIYA A |
| Cc: | GHAZI, PARISA |
| Subject: | RE: Final 1625 package; H312768 (tariff classification of controllable shading system) |

Acknowledged.

Thank you,



Kim Wachtel
National Import Specialist, Textile Branch, NIS 349
National Commodity Specialist Division |
Regulations and Rulings | Office of Trade
U.S. Customs and Border Protection

150 Westpark Way, Suite 200 | Euless, TX  76040
Cell:  972-269-3558
Email: kimberly.a.wachtel@cbp.dhs.gov

This document and any attachment(s) may contain restricted, sensitive, and/or law enforcement-sensitive information belonging to the U.S. Government.  It is not for release, review, retransmission, dissemination, or use by anyone other than the intended recipient.

From: GULIS, YULIYA A <YULIYA.A.GULIS@CBP.DHS.GOV>
Sent: Tuesday, January 11, 2022 11:38 AM
To: WACHTEL, KIMBERLY A <KIMBERLY.A.WACHTEL@CBP.DHS.GOV>
Cc: GHAZI, PARISA <parisa.ghazi@cbp.dhs.gov>
Subject: Re: Final 1625 package; H312768 (tariff classification of controllable shading system)

Hi Kim - this is close hold for now.  We just sent it out for publication and my plan is to notify the company a couple of days before the decision is published (which might be in 2 weeks).  As you know, this is a sensitive case.  Thank you so much.

Yuliya

> On Jan 11, 2022, at 12:33 PM, GHAZI, PARISA <parisa.ghazi@cbp.dhs.gov> wrote:

Good afternoon Kim,

Attached, please find our decision in the above-captioned case.

1

GOV0000341_overlay

The government redacted the following statements from GOV0000339-GOV0000340: "and I actually revised it," "it worked for her, but she did not forward this memo to the leadership," and "note that this is a sensitive case so we need to be updated on the timing of final publication (since I will have to give notice to the parties at interest a day or two before publication)."  Next, the

11

government redacted the following statements from GOV0000341-GOV0000342: "this is a close hold for now" and "my plan is to notify the company a couple days before the decision is published (which might be in 2 weeks).  As you know, this is a sensitive case."  Clearly none of these statements in any way relate to "opinions, recommendations, thoughts, advice and pre-decisional analysis regarding agency decisions relating to the modification of NY N010048 and the classification of the subjection merchandise" as had been alleged by the Department of Justice.  Exhibit C

In a further attempt to resolve the dispute, on July 27, 2023, Lutron sent a second letter reiterating its concerns with the government's refusal to commit to accepting subpoenas or providing last known addresses for former employees and the government's refusal to reconsider its redactions.  In response to our second letter and related conversations the government made clear that it will neither accept subpoenas for its former employees nor provide their last known addresses.  The government has also made it clear that it would not produce any further unredacted documents. The Letter and relevant emails are collectively attached as Exhibit H.  Lutron having no other remedy filed the instant motion.

## ARGUMENT

**I.     The Government Should Be Ordered to Produce the Last Known Addresses of any former government witness**

The government is currently withholding the last known addresses of critical witnesses in this matter citing 5 U.S.C. § 552a which prohibits the disclosure of certain personal information. The prohibitions of Section 552a, however, are not absolute.  Pursuant to Section 552a(b)(11), the prohibition does not apply to disclosure "pursuant to the order of a court of competent jurisdiction." In *Ford Motor Company v. United States*, 825 F.Supp. 1081 (Ct. Int'l Trade 1993) (*Ford*), this court considered the applicability of Section 552a(b)(11) to last known addresses of former CBP personnel. In *Ford* plaintiff sought the last known addresses of pertinent former customs personnel.  Like in the

instant matter, the Government objected arguing that Section 552a precluded such disclosure. Citing Section 552a(b)(11), which requires disclosure in response to a court order, Ford sought an order compelling the government to provide the information. In granting Ford's motion, the CIT explained that "[i]n assessing discovery requests based on 5 U.S.C. § 552a(b)(11), courts need only apply the ordinary relevance tests set forth in Fed.R.Civ.P.26(b)(1)." *Ford*, 825 F.Supp at 1083. The Court further explained that because each individual had relevant information concerning the case, "[a] fair reading of the discovery requests at issue on this motion indicates that each request is relevant to the underlying action in this case." *Id*. at 1085. Ultimately the court ordered disclosure.

Here, there can be no reasonable dispute that the former CBP personnel are relevant to this matter. Indeed, the retired individuals include the author of NY N010048 as well as various personnel that were consulted with respect to both NY N010048 and the modification ruling. As such we respectfully request that the Government be ordered to provide last known addresses to the extent it will not agree to accept service on behalf of any of the former personnel disclosed in its discovery responses.

**II.     The Government Should Be Ordered to Produce Unredacted Documents**

The deliberative process privilege protects "the quality of governmental decision making by maintaining the confidentiality of advisory opinions, recommendations, and deliberations that comprise part of the process by which the government formulates law or policy." *Meyer Corporation, U.S. v. United States*, 2016 WL 721949 (Ct Int'l Trade 2016) (*Meyer*). The privilege, however, does not protect all CBP materials. "Information that does not reveal the deliberative process, communications unrelated to the formulation of law or policy, and routine reports are not shielded by the privilege." *Meyer,* 2016 WL 721949 at 3. Likewise, unless linked to an actual future decision, the process of agency self-examination is not protected by the privilege. See *Lahr v. Nat'l Transp.*

13

*Safety Bd.*, 569 F.3d 965 (9th Cir. 2009). Finally, the privilege is not absolute, can be waived, and even if properly invoked, "may be defeated by a showing of evidentiary need by a plaintiff that outweighs the harm that disclosure of such information may cause to the defendant." *Meyer,* 2016 WL 721949 at 3.

As discussed below, the government should be compelled to produce the documents in unredacted form because, even if the deliberative process privilege applies to each redacted statement, which we do not believe, Lutron's need for the unredacted documents outweigh any governmental interest in non-disclosure. Alternatively, in light of the improper redactions already disclosed, the government should be compelled to turn over all documents to this Court for an *in-camera* inspection and be compelled to disclose any statements that the Court determines do not truly reveal protected deliberations.

    i.    **Lutron Has a Need for The Unredacted Materials**

Lutron is entitled to probe the factual and legal bases of NY N010048 and the Modification and the reasoning for the differing classification determinations. Such is critical not only to fully depose the government's witnesses but also in the overall preparation of the case for presentation to this Court including a rebuttal to any governmental assertion that the Modification Ruling is entitled to deference. The government's responses, however, are prejudicing Lutron's ability to do so.

For example, despite our request that the government explain all factual and legal bases for CBP's rulings, the government responded by citing to the rulings and asserting that the bases are set forth in the rulings "which are publicly available and incorporated by reference." Exhibit I. However, such is not the case. For example, the Modification ruling states that NY N010048 was the result of a GRI 3 analysis wherein the government determined that the machine's

electromechanical parts constituted the essential character. However, on its face, NY N010048 does not include such a discussion. Indeed, the government admitted in another response that "[u]pon further review of NY N010048, there is insufficient information in the ruling to determine to what extent GRI 3 or essential character was considered." *Id*. at Response 17. The Government then posits that the statement in the Modification ruling concerning essential character "was based upon a post-hoc assessment" of NY N010048. *Id.* CBP's post-hoc essential character analysis, the results of which CBP included in the Modification Ruling,[2] is critical to understanding the rationale behind both NY N010048 and the Modification Ruling. Lutron cannot be expected to divine all legal and factual bases for CBP's divergent decisions based on the rulings alone when its own counsel cannot do so. Further any post hoc analysis of an existing ruling is not pre-decisional by definition. Lutron is therefore entitled to the unredacted documents.

      **ii.**      **The Government Has No Defensible Interest in Non-Production**

Next, the Governmental has little, if any, interest in protecting the communications from disclosure because there is nothing to protect. The government's interrogatory responses have already disclosed the existence of the "post-hoc" essential character analysis related to NY N010048, and the divergent results of both analyses were made public when NY N010048 and the Modification Ruling were published. Thus, disclosure of the redacted statements, even if containing deliberations or a "post-hoc" essential character analysis, would not reveal any position that is not already public.

---

[2] Additionally, if CBP did indeed undertake an internal *post hoc* essential character analysis on NY N010048, CBP waived deliberative process privilege by incorporating the result into the Modification Ruling.

15

### III. Alternatively, The Government Should Be Ordered to Produce the Unredacted Documents for An *In Camera* Inspection

Finally, as discussed above, despite the relatively narrow parameters of the deliberative process privilege, the government has already been proven to have redacted statements which in no way concern CBP's deliberations. These include redacting such statements as "this is a sensitive case." Next, the government concedes in its interrogatory responses that it was not until "in or around July 2020 [that]. . . it was determined that NY Ruling N010048 was erroneous, and that reconsideration should be initiated" (Exhibit I at Responses 7, 8); however, the government redacted statements from emails dating back to 2018. See Exhibit C. Though the government argues that the earlier emails include deliberations concerning the classification of Lutron's shade machines entered in 2018 and the effect of N010048 thereon, there could not have been deliberative "thoughts, advice, and opinions" concerning the classification of Lutron's shade machines when there was a binding ruling in effect that would not be modified for several more years. At best, the redacted statements consist of agency self-examination. However, agency self-examination of a decades old binding ruling is not protected under the deliberative process privilege. See *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 965 (9th Cir. 2009). Next, facts are generally not protected by the deliberative process privilege. However, not a single factual statement concerning Lutron's shade machines, their constituent parts, and their functionality can be found in the redacted emails which is all the more remarkable considering that CBP claims to have undertaken two essential character analyses of the shade machines. Finally, it is well settled that statements adopted into a public ruling are not protected, yet not a single such statement remains. While the government claims that none of the redacted statements were adopted into the Modification Ruling, clearly the results of the "post-hoc" analysis of NY N0100104 was. The Modification ruling specifically states that "in NY N010048, CBP determined that the essential character of the controllable shading system was imparted by the

16

QEDs." Exhibit B.

As such, at a minimum, the government should be ordered to produce unredacted documents for an in-camera inspection and be ordered to disclose any statements not truly reflecting protected deliberations.

**WHEREFORE**, plaintiff requests that its motion be granted in all respects.

        Respectfully submitted,

        **SANDLER, TRAVIS & ROSENBERG, P.A.**
        *Attorneys for Plaintiff*
        675 Third Avenue, Suite 1805-06
        New York, New York 10017
        Telephone: (212) 549-0137

        By:   /s/ Jason M. Kenner
             JASON M. KENNER

Dated: October 13, 2023