## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. RICHARD K. EATON, SENIOR JUDGE

| | | |
|---|---|---|
| LUTRON ELECTRONICS CO., INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Court No.  22-00264 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>ORDER</u>

Upon reading plaintiff's motion to compel and defendant's opposition thereto; upon other papers and proceedings had herein; it is hereby

ORDERED that plaintiff's motion to compel be, and hereby is, denied.

_____
JUDGE

Dated:        New York, NY
             This      day of            , 2023

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HON. RICHARD K. EATON, SENIOR JUDGE

| | | |
|---|---|---|
| LUTRON ELECTRONICS CO., INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Court No.  22-00264 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

Defendant, the United States (Government), hereby responds to plaintiff's, Lutron Electronics Co., Inc. (Lutron), Motion to Compel.  For the reasons stated below, Lutron's motion should be denied.

## **BACKGROUND**

### A.      **Plaintiff's Claims In This Action**

This action concerns the proper tariff classification of "shading systems" imported by Lutron Electronics Co., Inc. (Lutron).  The "shading systems" consist of electronically operated window treatments (*e.g*., roller shades or honeycomb shades) that are used to moderate the amount of light passing through windows.  Upon liquidation, CBP classified the merchandise at issue under subheading 3925.30.10[1], Harmonized Tariff Schedule of the United States (HTSUS),

---

[1] Subheading 3925.30.10, HTSUS, provides for "Builders' ware of plastics, not elsewhere specified or included: Shutters, blinds (including venetian blinds) and similar articles and parts thereof: Blinds (including venetian blinds)."

dutiable at 3.3 percent *ad valorem*, or subheading 6303.92.20[2], HTSUS, dutiable at 11.3 percent *ad valorem*.  CBP also assessed 7.5% percent *ad valorem* duties on the merchandise classified under subheading 6303.92.20, HTSUS, under Section 301 of the Trade Act of 1974 (Pub. L. 93-618, 19 U.S.C. § 2411) pursuant to subheading 9903.88.15, HTSUS.  Lutron claims that the merchandise is properly classified under subheading 8479.89.95[3], HTSUS, dutiable at 2.5 percent *ad valorem*, and that the subject merchandise is not subject to Section 301 duties.

## II.     Lutron's Document Requests and Interrogatories Directed to the Government.

On February 3, 2023, Lutron served its First Requests for Production of Documents and Things Directed to Defendant seeking, among other things, documents relating to several CBP tariff classification rulings on the subject merchandise and other merchandise not at issue in this action.  *See* Docket No. 22-9.  In response, the Government produced CBP's files for New York Ruling Letter NY N010048 (May 3, 2007) wherein CBP had classified Lutron's shading systems in heading 8479, HTSUS, which covers certain machines and mechanical appliances.  CBP also produced the ruling file for HQ H312768 (Jan. 11, 2022), which modified NY N010048 by classifying the merchandise in heading 6303, HTSUS.  Finally, the Government also produced CBP's ruling files for several other classification rulings on merchandise that is not at issue in this case.  CBP redacted the predecisional analysis contained in about 65 documents on the grounds that it is protected from disclosure by the deliberative process privilege, and produced a privilege log to Lutron.

---

[2] Subheading 6303.92.20, HTSUS, provides for "Curtains (including drapes) and interior blinds; curtain or bed valances: Other: Of synthetic fibers: Other."

[3] Subheading 8479.89.95, HTSUS, provides for "Machines and mechanical appliances having individual functions, not specified or included elsewhere in this chapter; parts thereof: Other Machines and mechanical appliances: Other: Other."

Lutron also served its First Set of Interrogatories Directed to Defendant on February 3, 2023.  Several of Lutron's Interrogatories requested that CBP provide the last known address of former employees of CBP.  *See* Docket No. 22-10.  The Government objected to all of Lutron's interrogatories seeking the last known address of former CBP employees on the ground that such information is not relevant and is prohibited from disclosure by the Privacy Act.  *See* Docket No. 22-10.

In a letter dated June 6, 2023, pursuant to USCIT Rule 37, Lutron advised the Government that it considered several of its discovery responses deficient.  Specifically, Lutron contended that the Government's declination to provide the last known addresses of former CBP employees was untenable.  Lutron also contended that the Government's responses to Interrogatory Nos. 12 and 13 were deficient.  Lutron provided "revised" versions of both interrogatories and requested that the Government respond to those versions of the interrogatories.  Last, Lutron contended the Government's assertion of the deliberative process privilege was improper and that the redactions were excessive.

 The Government responded to Lutron's letter on July 18, 2023.  *See* Docket No. 22-8. In our letter, we advised that the Privacy Act prohibits the Government from disclosing the last known addresses of former CBP employees.  However, in a good faith effort to avoid the Court's intervention, we requested that Lutron identify the individuals that it would like to depose, and that we would then attempt to locate the former employees and ascertain whether they would consent to the Department of Justice accepting service of a subpoena for their deposition on their behalf.

With respect to Interrogatory Nos. 12 and 13, we responded to the revised version of Interrogatory No. 12.  However, because the "revised" version of Interrogatory No. 13 was a

completely new interrogatory, and not a mere revision, we advised that CBP would provide a separate response to that interrogatory.  Finally, we advised Lutron that we were producing several documents in unredacted form but that the Government maintained its assertion of the deliberative process privilege with respect to the remaining documents.  *Id.*

We later advised Lutron that we could not locate the former CBP employees and that we would not produce any additional documents in unredacted form.  Docket No. 22-9.  On October 13, 2023, Lutron filed a motion seeking an order compelling the Government to disclose the last known address of all former CBP employees identified in its discovery responses and to produce all documents in unredacted form.

## ARGUMENT

### I.  LUTRON IS NOT ENTITLED TO INFORMATION THAT IS PROTECTED BY THE PRIVACY ACT, 5 U.S.C. § 552a

Through its motion, Lutron seeks an order compelling the Government to disclose the last known addresses of "all former U.S. Customs and Border Protection (CBP) personnel" identified in the Government's responses to Lutron's interrogatories.  Pl.'s Mot. at 1.  The information that Lutron seeks, however, is protected from disclosure by the Privacy Act, 5 U.S.C. § 552a(b).  The Act prohibits a federal agency, such as the CBP, from "disclos[ing] any record which is contained in a system of records" unless the individual to whom the record pertains provides prior written consent to disclosure.  5 U.S.C. § 552a(b).  A federal agency, however, may disclose a record if one of several exceptions under Section 552a(b) is met.  *Id.*  Subsection (b)(11), permits a federal agency to disclose a record "pursuant to the order of a court of competent jurisdiction." *Id.* at § 552(a)(b)(11).

A party can obtain discovery of materials protected by the Privacy Act through the normal discovery process and according to the usual discovery standards.  The test for the

discoverability of information protected by the Privacy Act is the relevance standard set forth in Rule 26(b)(1).  *See Ford Motor Co. v. United States*, 825 F. Supp. 1081, 1083 (Ct. Int'l Trade 1993) ("In assessing discovery requests based on 5 U.S.C. § 552a(b)(11), courts need only apply the ordinary relevancy standard set forth in FED. R. CIV. P. 26(b)(1) (FRCP)," (citing *Laxalt v. McClatchy,* 809 F.2d 885, 889 (D.C. Cir. 1987)); *Mary Imogene Bassett Hosp. v. Sullivan,* 136 F.R.D. 42, 49–50 (N.D.N.Y. 1991)).

Rule 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  USCIT Rule 26(b). Where, as here, a party seeks to compel a response to a discovery request, "[t]he party that brings the motion to compel 'bears the initial burden of explaining how the requested information is relevant.'"  *Felder v. Wash. Metro. Area Transit Auth.*, 153 F. Supp. 3d 221, 224 (D.D.C. 2015) (quoting *Jewish War Veterans of the U.S., Inc. v. Gates*, 506 F. Supp. 2d 30, 42 (D.D.C. 2007)).

Here, the Privacy Act prohibits the Government from disclosing the last known addresses of CBP's former employees to Lutron, and those employees have not provided written permission to disclose their addresses.  Therefore, to obtain those addresses, Lutron must seek a court order and show that the former employees possess information that is relevant to the claims and defenses in this matter.  Lutron has failed to make that showing.  In its motion, Lutron argues that "there can be no reasonable dispute that the former CBP personnel are relevant to this matter."  Pl.'s Mot. at 13.  Lutron's conclusory statement is insufficient to establish relevance. Lutron has not identified the specific information or knowledge that it intends to seek from each former CBP employee, and how that information bears on the claims or defenses in this action.

Lutron cannot satisfy the relevancy standard set forth in Rule 26(b) and, therefore, cannot obtain the addresses of former CBP employees which are protected by the Privacy Act.

Lutron relies on *Ford* to support its disclosure argument, but that case highlights the deficiencies in Lutron's argument.  In *Ford*, the plaintiff moved to compel the Government to respond to several interrogatories which sought the addresses of former CBP employees.  825 F. Supp. at 1082.  The Government objected to the disclosure of that information on the grounds that it would violate the employees' right to privacy under the Privacy Act.  The Court held that, in deciding the motion to compel, it must determine whether the information the plaintiff sought under the Privacy Act is relevant.  To determine relevance, the Court looked to the pleadings to ascertain the nature of plaintiff's claim and then it discussed each individual from whom plaintiff sought information.  *Id*. at 1084-85.  The Court considered the role each individual had in the processing of the entries at issue.  Based on its analysis, the Court held that "[b]ecause each of these individuals appears to have had the opportunity to process the entries at issue in this case, the Court finds that they would have "knowledge of . . . discoverable matter" within the meaning of FRCP 26(b)(1)."  *Id*. at 588.

*Ford* is instructive here.  In *Ford*, the Court's relevancy determination was predicated on its examination of the nature of plaintiff's claims and each former CBP employee's nexus to the facts relating to those claims.  Lutron has not provided the Court with sufficient information to make a relevancy determination.  Lutron has not identified the information it seeks to obtain from the former employees, nor has it explained how that information is relevant to its claims.  Lutron's motion should be denied.  *See, e.g., RT Vanderbilt Co. v. United States*, 2010 WL 2706282, *5 (Fed. Cl. 2010) (court denied motion to compel the disclosure of addresses of

former government employees because plaintiff failed to provide "the specific information" it intended to seek from the individuals so that a relevancy determination could be made).

## II.     THE SUBJECT DOCUMENTS ARE PROTECTED BY THE DELIBERATIVE PROCESS PRIVILEGE

Lutron seeks an order compelling the Government to produce the documents identified by category below in "unredacted form."  Pl.'s Mot. at 14.

- Category No. 1 (Documents bearing beginning Bates Nos. GOV0000138; GOV0000158; GOV0000170; GOV0000172; GOV0000174; GOV0000181; GOV0000188; GOV0000193; GOV0000202; GOV0000208; GOV0000211; GOV0000222; GOV0000225; GOV0000232; GOV0000252; GOV0000266; GOV0000281; GOV0000292; GOV0000294; GOV0000311; GOV0000351; GOV0000353; GOV0000358; GOV0000361; GOV0000366; GOV0000373; GOV0000382; GOV0000394; GOV0000407; GOV0000429; GOV0000432; and GOV0000435): Emails between and among CBP employees at the National Commodity Specialist Division (NCSD) and/or the Commercial and Trade Facilitation Division (CTFD) or other CBP employees within Regulations and Rulings or the Office of Trade, concerning or reflecting the employees' thoughts, opinions, advice, and/or analysis related to the classification of the subject merchandise and/or the modification of NY N010048.  These emails were generated as part of CBP's pre-decisional deliberations related to its modification of NY N010048 and its classification of the subject merchandise in HQ H312768 (January 11, 2022).

- Category No. 2 (Documents bearing beginning Bates Nos. GOV0000152 and GOV0000155):  Emails between and among CBP employees at the CTFD concerning or reflecting the employees' thoughts, opinions, advice, and/or analysis regarding a procedural issue related to CBP's proposed modification of NY N010048.  These emails were generated as part of CBP's pre-decisional deliberations concerning the procedural issue.

- Category No. 3 (Documents bearing beginning Bates Nos. GOV0000177; GOV0000183; GOV0000218; GOV0000224; and GOV0000420):  Emails between and among CBP employees at the Machinery Center of Excellence and Expertise (the Machinery Center) or the Electronics Center of Excellence and Expertise (the Electronics Center) and the NCSD concerning or reflecting the employees' thoughts, opinions, advice, and/or analysis related to the classification of the subject merchandise and /or NY N010048.  These emails were generated as part of CBP's pre-decisional deliberations related to its classification of the subject merchandise in connection with the Machinery Center's or Electronic Center's review of entries of the subject merchandise.

- Category No. 4 (Documents bearing beginning Bates Nos. GOV0000249; GOV0000314; GOV0000317; GOV0000320; GOV0000325; GOV0000331; and GOV0000348): Emails between and among CBP employees at the CTFD concerning or reflecting the employees' thoughts, opinions, advice, and/or analysis concerning drafts of CBP's notice of proposed modification of NY N010048, published on September 30, 2020, in Volume 54, Number 38, of the Customs Bulletin, or drafts of CBP's ruling in HQ H312768 (Jan. 11, 2022). These emails were generated as part of CBP's pre-decisional deliberations related to its modification of NY N010048 and its classification of the subject merchandise in HQ H312768 (January 11, 2022).

- Category No. 5 (Document bearing beginning Bates No. GOV0000275): Emails between CBP employees at the CTFD that have been redacted to remove non-relevant and non-responsive text concerning or reflecting the employees' thoughts, opinions, advice, and/or analysis concerning an unrelated matter involving the classification of merchandise that is unrelated to the subject merchandise. The redacted text was generated as part of CBP's pre-decisional deliberations with respect to the unrelated matter.

- Category No. 6 (Document bearing beginning Bates No. GOV0000286): Emails between and among CBP employees at the NCSD and/or the CTFD concerning or reflecting the employees' thoughts, opinions, advice, and/or analysis regarding the disposition of NCSD case number N316722 and Headquarters "HQ" case number H238109 and the modification of NY N010048. N316722 concerned the classification of a stepper motor that is unrelated to the subject merchandise, and it culminated in the issuance of NY N316722 (January 8, 2021). HQ case number H238109 concerned a CBP-initiated reconsideration of NY N013565 (July 24, 2007), which involved the classification of quiet electronic drive units used in controllable shading and drapery track systems, and it was administratively closed without a decision on or around May 11, 2021, in view of CBP's proposed modification of NY N010448 in HQ H312768. These documents were generated as part of CBP's pre-decisional deliberations related to the disposition of NCSD case number N316722 and HQ case number H238109 and the modification of NY N010048.

- Category No. 7 (Document bearing beginning Bates No. GOV0000333): Emails between CBP employees at the CTFD concerning or reflecting the employees' thoughts, opinions, advice, and/or analysis relating to drafting internal memoranda regarding CBP's proposed modifications of NY N010048 and a separate, unrelated ruling concerning embroidered footwear. These emails were generated as part of CBP's pre-decisional deliberations related to its modification of NY N010048 in HQ H312768 (January 11, 2022) and the unrelated ruling concerning embroidered footwear.

- Category No. 8 (Document bearing beginning Bates No. GOV0000452): Memorandum prepared by CBP for the United States Department of the Treasury ("Treasury") conveying CBP's opinions, advice, recommendations, and analysis regarding

modification of NY N010048 and the classification of the subject merchandise. This document was prepared as part of CBP's pre-decisional deliberations related to its modification of NY N010048 and its classification of the subject merchandise in HQ H312768 (January 11, 2022).

- Category No. 9 (Documents bearing beginning Bates Nos. GOV0000474; GOV0000477; and GOV0000600): Internal Memoranda authored by employees at the CTFD concerning or reflecting the employees' thoughts, opinions, advice, and/or analysis related to the classification of the subject merchandise and/or the modification of NY N010048. These documents were generated as part of CBP's pre-decisional deliberations related to its modification of NY N010048 and its classification of the subject merchandise in HQ H312768 (January 11, 2022).

- Category No. 10 (Documents bearing beginning Bates Nos. GOV0000604 and GOV0000610): Internal Memorandum N310050 (March 23, 2020) prepared by the NCSD for the CTFD reflecting the NCSD's thoughts, opinions, advice, and/or analysis related to the classification, country of origin, and marking of certain motorized cellular shades. This document was generated as part of CBP's pre-decisional deliberations related to its ruling on country of origin, marking, and tariff classification of certain rechargeable motorized cellular window shades in HQ H310903 (June 17, 2020).

- Category No. 11 (Documents bearing beginning Bates Nos. GOV0000916; GOV0000985; and GOV0001061): Internal documents from the case files for N010048, N013565, or N293716 containing or reflecting CBP's pre-decisional opinions, advice, recommendations, and/or analysis concerning the classification of the merchandise in NY N010048 (May 3, 2007), NY N013565 (July 24, 2007), or NY N293716 (February 21, 2018). The redacted information in these documents was generated as part of CBP's pre-decisional deliberations related to its classification of the merchandise in NY N010048 (May 3, 2007), NY N013565 (July 24, 2007), or NY N293716 (February 21, 2018).

- Category No. 12 (Documents bearing beginning Bates Nos. GOV0001040; GOV0001043; GOV0001047): Emails between and among CBP employees at the NCSD concerning or reflecting the employees' thoughts, opinions, advice, and/or analysis related to the classification of certain window shades that are not at issue in this case. These emails were generated as part of CBP's pre-decisional deliberations related to its classification of the window shades in NY N293716 (February 21, 2018), NY N293719 (February 21, 2018), and NY N293721 (February 21, 2018). Two of these documents, GOV0001040 and GOV001047, also contain the confidential business information of a third party having no relation to plaintiff or this dispute. Such information has been redacted.

*See* Ex. 2, Declaration of Alice A. Kipel[4] (Kipel Dec.) ¶ 8; Ex. 3, Subject Redacted Documents.

Lutron argues that its "need for the unredacted documents outweigh any governmental interest in non-disclosure." *Id.* Specially, Lutron argues that it needs the information to "fully depose the government's witnesses" including a "rebuttal to any governmental assertion" of deference to HQ H312768 under *Skidmore v. Swift & Co.,* 323 U.S. 134 (1944). *Id.* As we show below, the predecisonal deliberative information that Lutron seeks is firmly protected by the deliberative privilege process, and Lutron cannot overcome that privilege.

The deliberative process privilege allows the government to avoid disclosing the discussions and methods of reasoning of its officials, which, if subject to disclosure, would temper candor during the decision-making process. *e.g.*, *NLRB v. Sears, Robuck & Co.*, 421 U.S. 132, 151 (1975). The deliberative process privilege thus serves as a safeguard against this danger. *See Carl Zeiss, Stifung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)*, aff'd,* 384 F.2d 979 (1967))*.* The deliberative process privilege reflects the "notion that agencies craft better rules when their employees can spell out in writing the pitfalls as well as strengths of policy options, coupled with the understanding that employees would be chilled from such rigorous deliberation if they feared it might become public." *Judicial Watch, Inc. v. United States Dep't of Def.,* 847 F.3d 735, 739 (D.C. Cir. 2017). *See also Sears*, 421 U.S. at 150 ("[H]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . ." (quoting *Nixon*, 418 U.S. at 705)). The privilege also avoids confusion from premature disclosure of ideas that are not—or not yet—final policy, and misimpressions from "dissemination of documents suggesting reasons and

---

[4] Alice A. Kipel is the Executive Director, Regulations & Rulings, in the Office of Trade of U.S. Customs and Border Protection.

rationales" not ultimately relied on. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *Jud. Watch, Inc.,* 847 F.3d at 739.

The deliberative process privilege protects information from disclosure if it is both "predecisional" and "deliberative" in nature. *See Jud. Watch, Inc.,* 847 F.3d at 739; *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975).  A document is predecisional if "it was generated before the adoption of an agency policy." *Judicial Watch, Inc.*, 449 F.3d at 151 (internal citations omitted); *A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 147 (2d Cir. 1994) ("[A]dvisory reports by individuals without authority to issue final agency dispositions are predecisional.").  Such documents "remain privileged even after the decision to which they pertain may have been effected, since disclosure at any time could inhibit the free flow of advice, including analysis, reports, and expression of opinion within the agency." *Fed. Open Mkt. Comm. of the Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 360 (1979).

A document is "deliberative" if it was "prepared in order to assist an agency decisionmaker in arriving at his decision," or if it "'reflects the give-and-take of the consultative process.'" *Formaldehyde Inst. v. HHS*, 889 F.2d 1118, 1122 (D.C. Cir. 1989) (quoting *Grumman Aircraft*, 421 U.S. at 184); *Public Citizen, Inc. v. OMB*, 598 F.3d 865, 874 (D.C. Cir. 2010) (*en banc*) (quoting *Judicial Watch*, 449 F.3d at 151).  Predecisional documents include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *100Reporters LLC v. United States Dep't of Just.*, 316 F. Supp. 3d 124, 152 (D.D.C. 2018) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, *866* (D.C. Cir. 1980)).

Here, the documents at issue are predecisional and deliberative.  The documents at issue mainly concern two rulings on tariff classification that CBP issued for the merchandise at issue:

New York Ruling Letter ("NY") N010048 (May 3, 2007) and HQ H312768 (Jan. 11, 2022)

which modified NY N010048.  *See* Ex. 1, Revised Privilege Log, Ex. 2, Kipel Dec., and Ex. 3,

Subject Redacted Documents.  The documents consist primarily of emails containing

information and analysis regarding the classification of the merchandise and were generated

before the issuance NY N010048 or HQ H312768.  *See* Ex. 1, Revised Privilege Log.

Furthermore, the documents contain the internal pre-decisional analysis, expressions of opinion,

mental impressions, advice and recommendations submitted for consideration between and

among personnel within CBP as part of the decision-making process.  See Ex. 1, Revised

Privilege Log; Ex. 2, Kipel Declaration at ¶ 11.  The identification of each document and the

specific explanation for the assertion of the privilege for each document is set forth in the

privilege log and in the Kipel Declaration provided by CBP, which we incorporate into this

response brief as though fully set forth herein.  *Id.*

## III.   LUTRON CANNOT OVERCOME THE DELIBERATIVE PROCESS PRIVILEGE

The deliberative process privilege is a qualified privilege that can be "overcome by a

sufficient showing of need."  *In re Sealed Case*, 121 F.3d 737, 746 (D.C. Cir. 1997).  "This need

determination is to be made flexibly on a case-by-case, *ad hoc* basis."  *Id.*  Each time the

privilege is asserted, a court "must undertake a fresh balancing of the competing

interests."  *Id.* (quotation omitted). "The court must weigh the public interest in 'prevent[ing]

injury to the quality of agency decisions' against the 'need of the party seeking privileged

evidence.'"  *Brown v. District of Columbia*, 2021 WL 3883647, at *4 (D.D.C. Aug. 31,

2021) (quoting *In re Sealed Case*, 121 F.3d at 746; *see also In re Anthem, Inc. Data Breach

Litig.*, 236 F. Supp. 3d 150, 159 (D.D.C. 2017)) ("[P]rivileged materials may be ordered

disclosed if the court concludes the private need for disclosure outweighs the public interest in non-disclosure.").

In making this determination, a court must consider:  (a) "the relevance of the evidence," (b) "the availability of other evidence," (c) "the seriousness of the litigation," (d) "the role of the government" in the litigation and (e) "the possibility of future timidity by government employees" should the materials be released.  *In re Sealed Case*, 121 F.3d at 737–38 (internal citations omitted).  "The party seeking the documents bears the burden of demonstrating that the balance of interests tips in his or her favor."  *In re Anthem, Inc. Data Breach Litig.*, 236 F. Supp. 3d 150, 159 (D.D.C 2017).

The balance of interests weighs in the Government's favor.  The first factor, relevance, tilts in the Government's favor.  This action involves the proper tariff classification of imported shading systems.  This Court reviews Customs' classification determination *de novo* - on the pleadings and record before the court.  *See* 28 U.S.C. § 2640(a)(1).  Thus, while CBP's rulings on the tariff classification of the merchandise at issue might provide context for the issue presented before the Court, the rulings are not binding on the Court, nor are they dispositive of any issue.

Lutron's assertion that it needs the redacted predecisional deliberative information contained in the documents to rebut any assertion of *Skidmore* deference is without any basis.  First, notwithstanding the soundness of the reasoning in HQ H312768, as a legal matter, we do not intend to seek deference to the ruling.  Therefore, the purported relevance of the information by plaintiff is without support.

Second, in *Ford Motor Co. v. United States*, 94 Fed. Cl. 211, 219 (2010), the court rejected Ford's argument that it needed deliberative documents to demonstrate that a Revenue

Ruling was entitled to little or no deference under *Skidmore*.  The court explained that applying

the *Skidmore* factors "does not require consideration of internal government deliberations"

because an evaluation of both the thoroughness evident in the ruling's consideration and the

validity of the ruling's reasoning ought to be apparent from the ruling itself and relevant

precedent.  *Id.*  The court also noted that, under *Skidmore*, "all of those factors which give an

administrative interpretation like a revenue ruling power to persuade must be gleaned from the

provisions of the ruling itself and the efficacy of its statutory interpretation—not predecisional

internal debate." *Id.* at 220.  Here, as in *Ford*, the power of CBP's ruling to persuade should be

evaluated based on the four corners of the document and the cited precedent; Lutron thus has no

need for predecisional deliberative information to demonstrate whether deference should be

afforded to CBP's ruling.

The second factor also tilts in the Government's favor.  Plaintiff controls the evidence on

the nature of the subject merchandise, and there is other evidence available to probe CBP's

defense in this matter including the unredacted documents that the Government produced and

testimony from CBP's designated agency pursuant to USCIT Rule 30(b)(6).  The third factor

favors neither party.  This litigation is "serious," as the Court's interpretation of the tariff

provisions at issue are important to the importing community.  The fourth factor weighs in favor

of Lutron, because the Government is invoking the privilege as a party to litigation, and as such,

the invocation must be carefully examined.

The fifth factor, however, tips the scales in the Government's favor.  In order to

administer the laws of CBP in an effective and well-informed manner, it is essential that there be

a free flow of advice, recommendations and opinions, including open and frank discussions

within the Government.  *See* Ex. 2, Kipel Dec. ¶11.  *See also United States Fish & Wildlife Serv.*

*v. Sierra Club, Inc.*, 141 S. Ct. 77, 785-86 (2021) (quoting *EPA v. Mink*, 410 U.S. 73, 87 (1973)

(deliberate process privilege protects agencies from being "forced to operate in a fishbowl . . .").

Often, discussions and exchange of written advice reflect differing points of view, the

consideration of which is essential to the decision-making process.  *Id*.  If such advice,

recommendations, analysis, and opinions are to be forthcoming in a fulsome and candid manner,

the same must be immune from public disclosure.  If these pre-decisional exchanges were

subject to disclosure, it would stifle the deliberative process and compromise the ability of CBP

to effectively execute its responsibilities.  *Id*.

Lutron argues that the Government does not have an interest in protecting the

communications from disclosure "because there is nothing to protect."  *Id*. at 15.  Lutron argues

that because the Government has already disclosed its classification analysis in NY N010048 and

HQ H312768, the full disclosure of the documents "would not reveal any position that is not

already public."  *Id.*  Predecisional deliberative analysis, recommendations, and opinions do not

lose their protective status under the deliberative process privilege after an agency's ultimate

decision is made public.  *See Fed. Open Mkt. Comm. of the Fed. Reserve Sys. v. Merrill*, 443

U.S. 340, 360 (1979)

On balance, Lutron has not demonstrated that its interest in the subject documents

outweighs the Government's interest in preserving the confidentiality of the document, the

balance of interests favors the Government, and documents should remain protected under the

deliberative process privilege.

## IV.   AN *IN CAMERA* INSPECTION OF THE DOCUMENTS IS NOT NECESSARY

Lutron requests that the Court conduct an *in camera* review of the documents in an

unredacted form to assess the basis for our assertion of the deliberative process privilege.  We

explain below why this type of review is unnecessary to decide and deny Lutron's motion. However, should the Court find it helpful, we stand at the ready to provide the documents to the Court for an *in camera* review.

Lutron has not challenged the sufficiency of the Government's privilege log, and Lutron's attempts to cast doubt on the propriety of the Government's redactions are unavailing. Lutron uses the fact that the Government removed redactions to several emails as purported proof that the Government's redactions are overly broad. But the Government's willingness to re-evaluate and withdraw its privilege claims with respect to those documents shows only that the Government is taking seriously its responsibility to ensure that all redactions are appropriate. And the fact that the Government is continuously reevaluating the issues and attempting to address plaintiff's concerns should not be used as a sword against it.

Lutron also challenges the date range of the redactions as there are several redacted emails from 2018 and 2019. Specifically, Lutron argues that the Government "conceded" that CBP did not determine that NY N010048 was incorrect until July 2020. Lutron then concludes that "there could not have been deliberative 'thoughts, advice, and opinions' concerning the classification of Lutron's shade machines" prior to July 2020. *Id*. at 16. Lutron argues that "[a]t, best, the redacted statements consist of agency self-examination," which is not protected by the deliberative process privilege. *Id*. Lutron's argument is without merit.

"[A]n agency's issuance of a 'final decision' with respect to a particular issue does not necessarily preclude the agency from withholding documents prepared in a subsequent evaluation of the question with the goal of confirming or rejecting its earlier conclusions." *Lahr v. Nat'l Transp. Safety Bd*., 569 F.3d 965, 981 (9th Cir. 2009); *see also Mary Imogene Bassett Hosp. v. Sullivan*, 136 F.R.D. 42, 47 (N.D.N.Y. 1991) (quoting *Sears*, 421 U.S. at 151 n.18))

(document drafted six years after promulgation of regulation at issue was protected by deliberative process because it was "part of the agency's 'continuing process of examining their policies'").  The documents "must be prepared in arriving at a future *particular* decision."  *Lahr*, 569 F.3d at 981 (emphasis added); *see also Judicial Watch*, 449 F.3d at 151 ("[D]ocuments dated after [a decision was made] may still be predecisional and deliberative with respect to other, nonfinal agency policies . . . .").

Contrary to Lutron's assertion, CBP began its deliberations on the modification of NY N010048 (May 3, 2007) in or around March 2018.  *See* Ex. B, Kipel Dec. at ¶ 5.  This was shortly after Mr. Brian Burke of Sandler, Travis & Rosenberg, PA, contacted CBP concerning a potential conflict in the classification of motorized window shades between NY Rulings NY293716 (Feb. 21, 2018) and N293719 Feb. 21, 2018), and N010048 and other rulings.  *See* Docket No. 22-10, Response to Interrogatory No. 7.  These deliberations culminated in CBP's decision to modify NY N010048 in HQ H312768.  Although its deliberations were protracted, CBP properly redacted its internal predecisional analysis relating to the modification of NY N010048.

Lutron next argues that the Government redactions were overly broad because it believes that "factual statements" have been improperly redacted.  *Id*. at 7.  Lutron is incorrect.  Factual information may be withheld under certain circumstances when it is inextricably connected to the deliberative material such that its disclosure would expose the agency's deliberations or when facts are selectively collected out of a larger group of facts and the selection of facts would reveal the agency's deliberative process.  *Brinton v. Dep't of State*, 636 F.2d 600, 606 (D.C. Cir. 1980) (The deliberative process privilege is "broad enough to protect those facts intertwined with the opinions or tending to reveal the deliberative process.")  *See also*, *e.g., Tarullo v. United*

*States DOD*, 170 F. Supp. 2d 271, 278 (D. Conn. 2001) ("Although the document does summarize relevant facts, that summary is so intertwined with . . . recommendations and opinions . . . that production of a redacted version would be incomprehensible, and the very selection of facts could also reveal the nature of those recommendations and opinions."); *Montrose Chem. Corp. v. Train*, 491 F.2d 63, 70–71 (D.C. Cir. 1974 (holding that large volume of public testimony compiled to facilitate an agency decision was part of the agency's deliberative process).  Moreover, a pre-decisional document will only lose its protection if the agency chooses to *expressly* adopt or incorporate it by reference.  *See*, *e.g., Sears*, 421 U.S. at 161.  "Where it is unclear whether a recommendation in fact provides the basis for a final decision, the recommendation should be protected."  *N. Dartmouth Properties v. United Dep't of Housing and Urban Developme*nt, 984 F. Supp. 65 at 69-70 (D. Mass 1997) (holding that fact that agency ultimately reached conclusion advocated by author of withheld document did not constitute adoption of author's reasoning).

Here, CBP did not redact factual information unless it was intertwined with deliberative materials such that it could not be disclosed without revealing the agency's deliberations.  Nor did CBP redact any statements that were expressly adopted or incorporated by reference.  Consequently, CBP's redactions are proper and an *in camera* review is not necessary.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court deny plaintiff's motion to compel in its entirety.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:   <u>/s/ Justin R. Miller</u>
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

<u>/s/ Marcella Powell</u>
MARCELLA POWELL
Senior Trial Counsel
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Room 346
New York, New York 10278
Tel. (212) 264-9253 or 9230

Date:  December 20, 2023        *Attorneys for Defendants*

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: HON. RICHARD K. EATON, SENIOR JUDGE

| | | |
|---|---|---|
| LUTRON ELECTRONICS CO., INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Court No.  22-00264 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the Rules of this Court in that it contains 5579 words, including text, footnotes, and headings.


/s/ Marcella Powell
MARCELLA POWELL